Mendel **SCHWIMMER d/b/a Supersonic Electronic Co., Plaintiff,**

v.

**SONY CORPORATION OF AMERICA and Sony Corporation, Defendants.**

**No. 77 C 1275.**

United States District Court, E. D. New York.

May 2, 1979.

Bass, Ullman & Lustigman, New York City (I. Scott Bass, New York City, of counsel), for plaintiff.

Rosenman, Colin, Freund, Lewis & Cohen, New York City (Asa D. Sokolow, Steven A. Asher, and Brian G. Lustbader, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, the sole proprietor of Supersonic Electronic Co., brought this action against Sony Corporation ("Sony") and Sony Corporation of America ("Sonam"), alleging violation of various antitrust laws and unfair competition.

Sonam is a wholly owned subsidiary of Sony and distributes Sony products in the United States. From December 1975 until some time in 1977 plaintiff, which sells consumer electronic products, purchased Sony products from Sonam for resale primarily to retailers. Plaintiff asserts that in 1975 and 1976 Sony sold discontinued or late model television sets and tape recorders to an American corporation named Interocean Industries, Inc. ("Interocean") at prices lower than those charged Sonam, indeed "far lower than I or anyone who bought from [Sonam] could purchase these products." Plaintiff claims that it was injured by this discrimination in price as a competitor of Interocean and of Interocean's customers. Plaintiff does not say why it did not purchase from Interocean.

Sony moves for summary judgment dismissing the amended complaint, which charges Sony in count 3 with violations of Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a),* in count 4 with violation of the Anti-Dumping Act of 1916, 15 U.S.C. § 72, and in count 6 with unfair competition.

---

* While the amended complaint alleges that "defendants" violated not only 15 U.S.C. § 13(a) prohibiting discrimination in price between purchasers but also 15 U.S.C. § 13(d) and (e) prohibiting discrimination in paying for or furnishing of services or facilities, apparently the only Robinson-Patman allegation against Sony is that it made sales to a dealer at a lower price than its sales to its subsidiary Sonam.

Section 2(a) of the Robinson-Patman Act provides in pertinent part:

"It shall be unlawful for any person engaged in commerce, in the course of commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefits of such discrimination, or with customers of either of them." 15 U.S.C. § 13(a).

Sony contends that, assuming a violation of this section, plaintiff has no standing to sue to recover damages sustained as a result. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides in pertinent part that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor" and recover treble damages and costs, including a reasonable attorney's fee. The Robinson-Patman Act is classified as one of the antitrust laws. *Bruce's Juices v. American Can Co.,* 330 U.S. 743, 750, 67 S.Ct. 1015, 91 L.Ed. 1219 (1946).

■ Read literally this language of Section 4 of the Clayton Act would permit the award of treble damages to anyone who could show that an antitrust violation contributed even partially or remotely to an injury to his business or property. But the courts have not given the statutory words "by reason of" any such literal interpretation. The concept of causation implies a web not a chain. For any occurrence there are innumerable causes which contribute in varying degrees to the result. *Pastorello v. Koninklijke Nederl Stoomb Maats,* 456 F.Supp. 882, 884 (E.D.N.Y.1978). Good sense suggests that Congress did not intend by Section 4 of the Clayton Act to permit suit for any injury logically though remotely traceable in any part to an antitrust violation. For practical reasons, if no others, the line must be drawn short of that.

But the formulation of a comprehensible rationale as to where to mark the boundary has been difficult. Sometimes it is said that a plaintiff may sue for a "direct" injury but not for one which is "indirect" or "remote". *See, e. g., Productive Inventions, Inc. v. Trico Prods. Corp.,* 224 F.2d 678, 680 (2d Cir. 1955), *cert. denied,* 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956); *Long Island Lighting Co. v. Standard Oil Co.,* 521 F.2d 1269, 1274 (2d Cir. 1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976). At other times the courts have termed the inquiry whether plaintiff lies within the "target area" of the violation. *See, e. g., Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.,* 454 F.2d 1292 (2d Cir. 1971), *cert. denied,* 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972); *Billy Baxter, Inc. v. Coca-Cola Co.,* 431 F.2d 183 (2d Cir. 1970), *cert. denied,* 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971); *GAF Corp. v. Circle Floor Co.,* 463 F.2d 752 (2d Cir. 1972), *cert. dismissed,* 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973).

But whatever the labels applied to the results any demarcation must respect the objectives of the anti-trust laws. *Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., supra,* 454 F.2d at 1295–96. The purpose of Section 4 of the Clayton Act was to provide for private enforcement and deterrence of violations of the antitrust laws by permitting a recovery of treble damages. *Id.* This is a fearsome weapon, and care must be taken that it is placed in hands which will vindicate the objectives of the antitrust laws without imposing disproportionate burdens on defendants and the courts. The decisions of the Supreme Court in *Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) and *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), though addressing statutory issues analytically distinct from that posed here, were based on similar considerations.

In this case it is appropriate to consider not only the objectives of Section 4 of the Clayton Act but also the language and pur-

poses of the Robinson-Patman Act. It has been called "a singularly opaque and elusive statute." *FTC v. Sun Oil Co.,* 371 U.S. 505, 530, 83 S.Ct. 358, 372, 9 L.Ed.2d 466 (1963). Certainly "precision of expression" is not its "outstanding characteristic". *Automatic Canteen Co. v. FTC,* 346 U.S. 61, 65, 73 S.Ct. 1017, 97 L.Ed. 1454 (1953). When passed in 1936 the Act was a compromise between conflicting, perhaps irreconcilable, policy objectives, the maintenance of price competition for the benefit of the consumer and the protection of smaller business firms from competition. *H.R.Rep. No. 2287, 74th Cong., 2d Sess. (1936).* Subsequent uncertain and inconsistent interpretations of almost every provision of the Act have reflected its schizoid origins.

Although Section 4 of the Clayton Act applies to injuries caused by violations of any of the antitrust laws, in determining the standing of plaintiffs alleging Robinson-Patman Act claims there are additional considerations beyond those at stake in a Sherman Act action. The very presence on the books of the treble damage remedy is presumably a deterrent not only of conduct violative of the antitrust laws but also of some conduct approaching such illegality. One faced with the possibility of such a recovery may well refrain from practices which would eventually, if litigated, be found proper. To the extent that the threat of a treble damage Robinson-Patman Act claim inhibits legal price competition that threat has social costs inconsistent with the presuppositions of our competitive society. The same cannot generally be said of the prospect of a Sherman Act claim for treble damages. Accordingly in a case of alleged price discrimination such as that alleged here the court must be cautious not to extend standing to bring suit beyond that needed for effective enforcement of the Robinson-Patman Act.

Typically a seller's discrimination in price between purchasers will have an adverse economic impact on the disfavored purchaser or on a competing seller. Ordinarily those injured persons are available to vindicate the purposes of the Robinson-Patman Act.

■ Indeed, some courts have said, without referring to Section 4 of the Clayton Act, that an individual can have no cause of action under Section 2(a) of the Robinson-Patman Act unless he is an actual purchaser from the person charged with the discrimination. *See, e. g., Klein v. Lionel Corporation,* 237 F.2d 13, 14–15 (3rd Cir. 1956). But in this court's opinion that goes too far. Where the seller has the specific intent that the discrimination affect a customer further down the distribution line there is no reason to disable that customer from bringing suit. *See, e. g., FLM Collision Parts, Inc., v. Ford Motor Company,* 406 F.Supp. 224 (S.D.N.Y.1975), *aff'd in part on other grounds, rev'd in part on other grounds,* 543 F.2d 1019 (2d Cir. 1976), *cert. denied,* 429 U.S. 1097, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977). Where such intent can be shown the customer at whom the violation is aimed may well have the keenest motive to play the deterrent role. Moreover, the more specific the intent the less the likelihood that damages will be difficult to prove, cumulative, or otherwise unduly burdensome to the court or the defendant. *See Calderone Enterprises Corp. v. United Artists Theatre Circuit, supra,* 454 F.2d at 1295.

But where the seller's specific aim has not been at customers further down the line the pragmatic considerations already mentioned suggest that the right to bring a treble damage action be restricted to the initial purchaser or a competing seller. This line, like every other drawn on practical grounds, is to some degree arbitrary but has the virtue, desirable under the circumstances, of being easily identifiable.

■ In this case plaintiff does not suggest that the discrimination in price was aimed at him or that Sony controlled the resale price by Sonam or Sony's other purchasers. *See American News Co. v. FTC,* 300 F.2d 104 (2d Cir. 1962). Plaintiff therefore has no standing to assert the Robinson-Patman claims, and they will be dismissed.

Sony argues that plaintiff lacks standing to assert its claim against Sony under the Anti-Dumping Act of 1916, 15 U.S.C. § 72.

That Act, passed during World War I to protect American manufacturers, provides in pertinent part as follows:

"It shall be unlawful for any person importing or assisting in importing any articles from any foreign country into the United States, commonly and systematically, to import, sell or cause to be imported or sold such articles within the United States at a price substantially less than the actual market value or wholesale price of such articles, at the time of exportation to the United States, in the principal markets of the country of their production, or of other foreign countries to which they are commonly exported after adding to such market value or wholesale price, freight, duty, and other charges and expenses necessarily incident to the importation and sale thereof in the United States: Provided, That such act or acts be done with the intent of destroying or injuring an industry in the United States, or of restraining or monopolizing any part of trade and commerce in such articles in the United States."

The section makes any violation a misdemeanor and then provides in pertinent part that "[a]ny person injured in his business or property by reason of any violation" of the section may sue and recover treble damages, costs, and a reasonable attorney's fee. This wording, passed in 1916, 39 Stat. 798, tracks the language of Section 4 of the Clayton Act, enacted two years earlier, and should be construed in the light of the considerations already discussed.

The Anti-Dumping Act by making it unlawful to import and sell goods in the United States "at a price substantially less than the actual market value or wholesale price" sought to protect native manufacturing interests from the dumping of inexpensive products in the American market by the older established European manufacturers. The act is perhaps used to attack different evils today but it was passed to shield local manufacturers from unfair competition in local markets.

Sony's manufacturing competitors will be injured by its alleged dumping of consumer electronic products on the American market below cost because presumably they will be unable to offer their products at such a low price. Congress was concerned with their interests, and they are the most appropriate persons to vindicate those interests by a treble damage action.

There is even less reason to accord plaintiff standing to sue for violations of the Anti-Dumping Act than there is to permit him to bring action under the Robinson-Patman Act. The Anti-Dumping Act is not directed to price differentials generally but has a limited and specific objective which local manufacturers may be expected to pursue.

■ Plaintiff is without standing to sue under the Anti-Dumping Act. A similar holding was made in *Bywater v. Matshushita Electric Industrial Co.,* [1971 Transfer Binder] Trade Reg.Rep. (CCH) ¶ 73, 759 at 91,201 (S.D.N.Y.1971).

■ Sony maintains that plaintiff has failed to state a claim for unfair competition. Plaintiff's claim rests on Sony's alleged antitrust violations and its alleged participation in various anticompetitive pricing and advertising practices of Sonam. The claim must be tested for sufficiency by reference to New York law. New York courts have permitted actions for common law unfair competition only where the plaintiff alleges deception or appropriation of exclusive property. Plaintiff makes no such allegations. Nor does he point to any authority permitting a claim of unfair competition based on the anticompetitive practices alleged in the papers. Plaintiff's claim is insufficient.

Sony's motion for summary judgment is granted. Sony has also moved for a stay of discovery pending decision on this motion. In light of this determination, it is unnecessary to decide that motion. So ordered.