DURANTE BROS. AND SONS, INC., Plaintiff,

v.

FLUSHING NATIONAL BANK, Jack Farber and Richard Gelman, Defendants.

No. 80 C 1385.

United States District Court, E.D. New York.

Sept. 27, 1983.

---

Beldock Levine & Hoffman, New York City (Melvin L. Wulf, John B. Levinson, Helene Fromm, New York City, of counsel), for plaintiff.

Shea & Gould, New York City (Milton S. Gould, Fran M. Jacobs, Peter C. Neger, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, a New York corporation, brought this action against Flushing National Bank (the Bank) and two of its officials, claiming violations of Title IX, Racketeer Influenced and Corrupt Organizations, of the Organized Crime Control Act of 1970 (the Act), 18 U.S.C. §§ 1961 *et seq.*, the Federal banking laws, 12 U.S.C. §§ 1 *et seq.*, and New York state law.

Defendants moved for summary judgment on six of the seventeen counts in the amended complaint, urging that (1) counts one, three and five are barred by the statute of limitations, (2) counts two and four, alleging violation of four federal banking law provisions, are either time barred or do not afford a private right of action, and (3) count six fails to state a claim under the Act. The other eleven counts assert pendent state claims that defendants say should not survive dismissal of the federal claims.

The facts underlying the first count are, according to plaintiff, in substance the following. Commencing evidently in 1973 the plaintiff and Bank had a borrowing relationship on an unsecured basis. In that year the Bank also lent Louis Durante, Sr., (father of John Durante, plaintiff's president and sole shareholder) $41,800 to invest in a real estate venture by Jerder Realty Services, Inc. (Jerder), a New York corporation, and charged an usurious rate of interest. In November 1974 defendant Farber, the Bank's chief executive, director and controlling shareholder, got the Bank to make Jerder a $200,000 mortgage loan, and personally guaranteed it in return for a $100,000 investment in Jerder calling for specified future returns.

After November 1974 the Bank made further loans to Jerder up to the federal lending limit. Then Farber had the Bank make loans to a partnership composed of Jerder's principals including himself and Louis Durante, Sr., the funds to be used as capital for Jerder.

By July 1975 the Bank's unsecured loans to plaintiff totalled $142,500. In that month plaintiff bought a real estate parcel (Parcel A) in Brooklyn, and in October 1975 requested from the Bank a $100,000 mortgage loan to make the purchase of a contiguous parcel (Parcel B). At that time Jerder was in financial difficulty, and its loan payments to the Bank were past due.

When defendants received plaintiff's request they evolved a fraudulent scheme to defraud plaintiff and to offset the Bank's and Farber's anticipated losses on the Jerder loans. Pursuant to the scheme defendants falsely represented that the Bank

would make the $100,000 mortgage loan to plaintiff. In reliance on this representation plaintiff got short term, thirty day financing, pledging its accounts receivable, and bought Parcel B for $142,500 on December 12, 1975. Defendants knew that plaintiff's business would suffer unless it could replace the short term financing with a mortgage loan.

On December 18, 1975 defendants told plaintiff that the Bank would not make the $100,000 mortgage loan. Further, defendants said they would require immediate payment of plaintiff's unsecured loans of $142,500 (which had theretofore been regularly extended) unless plaintiff gave the Bank a second mortgage in that amount on Parcel A, guaranteed by the Durantes and others. On the same day the plaintiff executed the second mortgage. Plaintiff repaid the short term financing with funds it otherwise could have used in its business.

On February 24, 1976 defendants coerced John Durante to have plaintiff pay the Bank the $41,800 owed to it by Louis Durante, Sr., by increasing the mortgage by that amount and giving the Bank a first mortgage on Parcel B and a second mortgage on Parcel A in the total amount of $181,925. On March 10, 1976 plaintiff executed a consolidated mortgage for that amount covering both parcels. The Bank charged plaintiff exorbitantly for the time spent by the bank's officials and for legal fees and closing costs. These charges and the $41,800 were therefore criminally usurious interest on the original loans to plaintiff of $142,500.

On April 26, 1978 the Bank, claiming default, brought an action in state court to foreclose the consolidated mortgage. That action has been stayed pending termination of this action.

The first count concludes that defendants willfully violated the Act, 18 U.S.C. § 1962, in that the Bank derived income through collection of an unlawful, usurious debt and used the income in its operation, and defendant officials participated in the collection of the unlawful debt and conspired to that end.

The second count repeats the allegations of the first and concludes that the individual defendants violated federal law by (a) causing the Bank to charge interest made usurious by 12 U.S.C. § 85, (b) making false entries in the Bank's books in violation of 18 U.S.C. § 1005, (c) furnishing false reports to the Comptroller of the Currency (the Comptroller) as to the Bank's condition in violation of 12 U.S.C. § 161, and (d) making false statements to influence the Bank's action on the consolidated mortgage in violation of 18 U.S.C. § 1014.

The third count repeats all previous allegations and asserts that starting April 6, 1976 through 1977 the Bank extended overdraft privileges to plaintiff and received, with the participation of the defendant officials, usurious interest in violation of the Act, 18 U.S.C. § 1962.

The fourth count alleges that in connection with the receipt of interest on the overdrafts defendant officials violated the same laws as are referred to in the second count.

The fifth count alleges that by commencing the foreclosure action in April 1978 defendants violated the Act by collecting an unlawful debt, 18 U.S.C. § 1962.

The sixth count alleges that, in order to execute their scheme to defraud, defendants caused to be mailed to plaintiff during the period January 1976 through February of 1978 monthly bank statements of account at the Bank and on March 20, 1978 a letter, thus engaging in a pattern of racketeering activity in violation of the Act, 18 U.S.C. § 1962.

I

■ Defendants argue that counts one, three and five are time barred. All three counts claim a violation of the Act in that the Bank received income derived from "collection of an unlawful debt" and used the income in the Bank's operation, or that defendant officials participated in the Bank's collection of an unlawful debt or conspired to do so.

In 18 U.S.C. § 1962(a) the Act makes it unlawful for a person to use income in the operation of an enterprise affecting interstate commerce where the income is derived either (i) "from a pattern of racketeering activity" (including various statutory frauds as defined in 18 U.S.C. § 1961(1)(B)) or (ii) "through collection of an unlawful debt." The Act also prohibits participation by a bank employee in either of those types of violations, 18 U.S.C. § 1962(c), or a conspiracy to commit them, 18 U.S.C. § 1962(d). Under 18 U.S.C. § 1964 a person injured by a violation of section 1962 may sue for threefold damages, plus costs and attorneys fees.

The Act thus makes illegal two different kinds of activities pertinent to the claims in the amended complaint. One kind is engaging in "a pattern of racketeering activity," as exemplified by the alleged mail frauds set forth in count six. The other is the "collection of an unlawful debt," as claimed in counts one, three and five. The question raised by defendants' motion as to those three counts is what limitation period applies to a claim based on the Act's prohibition against collection of an unlawful debt.

The parties agree that since the Act contains no limitations period, the court must look to the most analogous New York State statute. Defendants point to section 215(6) of the New York C.P.L.R., requiring "an action to recover any overcharge of interest or to enforce a penalty for such overcharge" to be brought within one year. This action was brought on May 21, 1980, more than two years after the last interest payment on the consolidated mortgage on December 19, 1977. To the extent that plaintiff was injured by the payment of usurious interest and seeks to recover that interest, and a penalty for the overcharge, the claim falls squarely within the language of C.P.L.R. § 215(6).

Plaintiff argues, however, that the three counts allege more than a usury claim, that the collection of usurious interest was only part of a scheme to defraud embracing other elements, and that therefore the court should apply the six year statute contained in C.P.L.R. § 213(8), providing that "an action based on fraud" must be commenced within six years.

Plaintiff's assertions of fraud do not alter the federal predicate on which the three counts rest, namely, the Act's prohibition against the "collection of an unlawful debt." The addition of allegations of false representations to a claim based on such a predicate does not transmogrify the claim into one "based on fraud." The nature of the claim is determined by the law which gives rise to it. The fraud allegations, while pertinent to the claim in count six of "racketeering activity," are superfluous to a claim for "collection of an unlawful debt."

This court does not read *McNellis v. Raymond*, 420 F.2d 51 (2d Cir.1970), as requiring application of the six year fraud limitation. There the "basic theory" for the claim of a bankruptcy trustee to recover payments of a bankrupt to a creditor was that the payments were fraudulent because made without consideration while the debtor was insolvent.

Plaintiff says that the Act's explicit grant of a civil remedy, including threefold damages and attorney's fees, bespeaks a broad national purpose to drive corruption from the marketplace, an end which should be advanced by choosing a longer limitation period. No doubt when Congress has provided no federal statute of limitations and has left the matter to the analogous state law, there may be instances in which the state has permitted so short a time to bring suit as effectively to frustrate federal policy. In such cases it may be fair to imply a congressional purpose to allow a longer period. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463, 465, 95 S.Ct. 1716, 1721, 1722, 44 L.Ed.2d 295 (1975).

But there is no reason to suppose that Congress believed one year to be an unreasonably short period to sue to recover an overcharge of interest or a penalty for the overcharge. And in this case plaintiff was clearly not without sophistication. There is no suggestion that it did not know what interest it was paying, was in doubt as to

the nature of the banking transactions into which it entered, or lacked access to legal counsel. In fact the amended complaint is full of allegations that plaintiff felt aggrieved and coerced by the actions of the Bank.

There is no merit to plaintiff's argument that if the six year fraud limitation in C.P. L.R. § 213(8) does not govern, the court should adopt the three year period of C.P. L.R. § 214(2), applicable to actions "to recover upon a liability, penalty or forfeiture created or imposed by statute." Plaintiff's brief quotes only this part of the section and omits the concluding words: "except as provided in sections 213 and 215."

Counts one, three and five are barred by C.P.L.R. § 215(6).

## II

Counts two and four allege violations by the individual defendants of four federal statutory provisions.

### A.

■ The first is 12 U.S.C. § 85, which establishes the maximum interest rate a national bank may charge. The counts assert that Farber caused the Bank to charge interest in excess of this maximum. Defendants contend that the exclusive remedy for a violation of the section is a suit against the Bank under 12 U.S.C. § 86, which permits the person who has paid the excess interest to bring an action to recover from the Bank twice the amount of the interest thus paid, "[p]rovided, that such action is commenced within two years from the time the usurious transaction occurred." Here, of course, more than two years elapsed before suit was brought.

Plaintiff urges that the remedy afforded by 12 U.S.C. § 86 against the Bank does not preclude an action against the Bank's directors under 12 U.S.C. § 93. That section provides that if the directors of a national bank knowingly violate "any of the provisions" of the chapter 2 of the federal banking law (which includes 12 U.S.C. § 85), the bank's franchise shall be forfeited if the

violation is determined in a suit brought by the Comptroller, and in cases of "such violation" every director who participated in it shall be held liable for all damages which the bank, its shareholders, "or any other person" shall have sustained "in consequence of such violation."

The court need not decide whether 12 U.S.C. § 86 precludes an action against a director of the Bank to recover usurious interest charged by it. As noted above, 12 U.S.C. § 93 contains no statute of limitations. Even if the section permits plaintiff to maintain a claim for a violation of 12 U.S.C. § 85, the court must refer to the analogous state limitation. For the reasons stated in the discussion of counts one, three and five the claim against Farber to recover damages arising out of payment of usurious interest is barred by C.P.L.R. § 215(6).

### B.

In counts two and four plaintiff also seeks damages against both individual defendants for violation of two criminal provisions, 18 U.S.C. §§ 1005 and 1014. Section 1005, in pertinent part, makes it a crime for an officer or director of a national bank to make "any false entry in any book, report or statement" of the bank "with intent to injure or defraud such bank, or any other company." Section 1014, so far as relevant, makes it a crime for anyone knowingly to make "any false statement" for the purpose of "influencing in any way the action" of a national bank on any application or loan.

Plaintiff bases its claim for damages for violation of these two provisions on 12 U.S.C. § 503. That section recites, in substance, that a director or officer of any national bank who knowingly violates any of the provisions of, among other sections, 18 U.S.C. §§ 1005 and 1014 shall be personally liable for "all damages" which the bank, its shareholders, "or any other person" shall have sustained "in consequence of such violation."

This language of 12 U.S.C. § 503 makes it clear that plaintiff may sue the individual defendants for alleged violations of 18 U.S.C. §§ 1005 and 1014, provided the dam-

ages are "in consequence" of the violations. The "consequences" of any given event are, in a literal sense, innumerable. Causation is a web not a chain, *Schwimmer v. Sony Corp. of America,* 471 F.Supp. 793, 795 (E.D.N.Y.1979), aff'd, 637 F.2d 41 (2d Cir. 1980), and every act has some effect on myriads of other occurrences, many hardly to be anticipated in the common experience of humankind. The purpose of section 503 certainly could not have been to reach all of these. A pragmatic and in the end more or less arbitrary decision must be made as to where to draw the line, having in mind both the dominant purpose of the legislation and the consequences of extending liability beyond a given point. *Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.,* 454 F.2d 1292, 1295 (2d Cir.1971), cert. denied, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972).

The papers before the court do not establish the kind and degree of causal connection between the alleged violations of 18 U.S.C. §§ 1005 and 1014 and the damages plaintiff claims. Before trial the court will require an offer of proof by plaintiff so that the court may decide whether the alleged damages could be deemed the "consequence" of the violations.

### C.

The other statute which counts two and four allege the individual defendants violated is 12 U.S.C. § 161. That provides, in pertinent part, that a national bank shall make certain reports, verified and attested by certain officers and directors, to the Comptroller. Counts two and four assert that Farber caused the Bank to file false reports.

Plaintiff also bases this claim on 12 U.S.C. § 93, discussed above, and says that plaintiff is an "other person" who has sustained damages "in consequence of" the participation by the individual defendants in filing reports with the Comptroller.

Defendants argue that only the Comptroller has standing to sue for violation of 12 U.S.C. § 161, and indeed, as recited above, 12 U.S.C. § 93 provides that a viola-

tion by directors of provisions of the applicable banking laws shall be determined in a suit brought by the Comptroller, "[a]nd in cases of such violation" a director who participated in the violation shall be liable for the damages sustained by the bank, its shareholders, or any other person "in consequence of such violation."

One possible reading of the section would be to require a successful suit by the Comptroller before actions by others could be instituted. But the courts have not so construed the language and have permitted shareholders to sue for a violation of 12 U.S.C. § 161 before the Comptroller has prevailed. *See Chesbrough v. Woodworth,* 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917). If an injured "shareholder" may sue, so too may "any other person," provided that the person sustains damages "in consequence of such violation."

It is reasonable to say that a shareholder, such as the plaintiff in the *Chesbrough* case, who relied to his detriment on a false report to the Comptroller, sustained damage "in consequence of" the violation. The injury was immediately and directly the result of the false report. It is more difficult to see why plaintiff's alleged damages should be thought "in consequence of" the alleged false reports. Plaintiff is not said to have relied on the reports, and presumably its alleged damages stemmed from the failure of the Comptroller to take such action as he might have, had accurate reports been filed. However, the court will not determine the question before an offer of proof by plaintiff.

### III

█ Count six alleges that, in order to execute the scheme to defraud, defendants mailed bank statements of plaintiff's accounts from January 1976 through February 1978 and a letter dated March 20, 1978, asking John Durante to arrange a time to meet with the Bank officials to "come to some conclusions" as to plaintiff's dealings with the Bank.

Plaintiff says that by mailing these items and a demand letter of January 11, 1978 preparatory to bringing the foreclosure action, defendants participated in "a pattern of racketeering activity." Under 18 U.S.C. § 1961(1) "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (the so-called mail fraud statute), and a "pattern of racketeering activity" means the commission within ten years of at least two acts indictable under various statutes including the mail fraud statute.

Defendants urge that the mailings of the bank statements and the letters were not "for the purpose of executing" the scheme as the mail fraud statute, 18 U.S.C. § 1341, requires. According to defendants the bank statements merely memorialized the transactions that had taken place in plaintiff's account for the preceding month and could have no effect on the success or failure of the alleged scheme.

Whether the mailings were part of an attempt to collect loans which plaintiff alleges it was fraudulently induced to assume is a question of fact which this court cannot decide on a motion for summary judgment. If plaintiff can establish that the mailings were part of such an attempt, the jury would be entitled to find that they were made for the purpose of executing the alleged fraud. *United States v. Maze,* 414 U.S. 395, 400, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974); *United States v. Marando,* 504 F.2d 126, 130 (2d Cir.1974).

Defendants urged in their initial brief that no claim under the Act exists where plaintiff does not allege that defendants are tied to organized crime. Subsequently the Court of Appeals for the Second Circuit in *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 21 (2d Cir.1983), said that the language of the statute did not premise a violation of the Act on proof of a connection with organized crime. While this was *dictum,* it was carefully considered, and this court treats it as binding.

### IV

Defendants' motion to dismiss counts one, three and five and those parts of counts two and four which allege violations of 12 U.S.C. § 85 is granted. The motion is otherwise denied. So ordered.