**ESTEE LAUDER, INC., Plaintiff,**

**v.**

**HARCO GRAPHICS, INC., Harry Aronson, and Perry Printing Corporation, Defendants.**

**No. 82 Civ. 8188 (CBM).**

United States District Court,
S.D. New York.

March 21, 1984.

Hendler & Murray by Michael Maillet, New York City, for plaintiff.

Lankenau Kovner & Bickford by John C. Lankenau, New York City, for defendant Perry Printing Corp.

## MEMORANDUM OPINION

MOTLEY, Chief Judge.

Plaintiff Estee Lauder, Inc. (Estee Lauder) has brought this action charging three defendants with violating the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq., as well as with common law fraud. Specifically, Estee Lauder has charged defendants Harco Graphics (Harco), Harry Aronson (Aronson) and Perry Printing (Perry) with engaging in a pattern of racketeering activity predicated on violations of the federal mail fraud, federal racketeering and New York commercial bribery statutes, 18 U.S.C. § 1962(c). The defendants are also charged with conspiring to engage in a pattern of racketeering activity, 18 U.S.C. § 1962(d). Only Perry has appeared in this action.

This case is now before the court on Perry's motions to dismiss the complaint and for summary judgment, Fed.R.Civ.P. 12(b) and 56(b). For the reasons set forth below, the court denies these motions.[1]

## BACKGROUND

Estee Lauder is a New York corporation which manufactures, distributes and sells cosmetics in interstate commerce under a variety of trademarks. Perry Printing is a Wisconsin corporation doing business as a commercial printer. Harco is a New York corporation; Aronson is an officer, shareholder and employee of Harco.

In order to promote the sale of its cosmetic products, Estee Lauder invests substantial sums of money on direct mail and point-of-sale promotional materials. To that end, Estee Lauder purchases millions of dollars of printing from commercial printers like Perry Printing.

This action arises out of the alleged misconduct of Stephen Juda (Juda), who ran Estee Lauder's production department from 1973 until June 1979. Juda's responsibilities included arranging for the printing of promotional materials by contracting with commercial printers. Estee Lauder contends that Juda initiated a scheme whereby he received kickbacks in exchange for awarding printing contracts. Under this scheme, printers would overcharge Estee Lauder for work performed. Juda then would authorize payment of the overcharges. Once paid, the printers would funnel money to High Street Graphics (High Street), a dummy corporation owned by Juda.[2] In this vein, Estee Lauder alleges that Perry Printing overcharged it by over $500,000. This sum was then passed from Perry to Harco. Harco, in turn, passed part of the overcharge, nearly $150,000, on to High Street.

As indicated, Estee Lauder maintains that this scheme resulted in violations of the RICO statute as well as in common law fraud. In addition to this litigation, Estee Lauder filed suits against Juda and other printers.[3]

---

1. Estee Lauder has moved to sever its claim against Harco and to amend the complaint to assert diversity jurisdiction as an addition basis of subject matter jurisdiction. The court will address these motions at the next pre-trial conference.

2. Juda apparently set up dummy corporations other than High Street. Estee Lauder's complaint, however, mentions only High Street.

3. Estee Lauder sued Juda in New York state court. A suit similar to this one was filed against Harco, Aronson and Spencer Press, Inc. in the Southern District. *See Estee Lauder, Inc.*

## DISCUSSION

### 1. *Motion to Dismiss the Complaint*

Perry moves to dismiss the complaint on three grounds. First, Perry argues that Estee Lauder has failed to allege the requisite association between Perry and a RICO enterprise. Second, Perry urges adoption of a narrow definition of RICO enterprise which would exclude Perry. Third, Perry argues that Estee Lauder's complaint does not allege the appropriate sort of injury under RICO. The court finds no merit in any of these contentions.

■ To establish a violation of section 1962(c), Estee Lauder must demonstrate that Perry was "employed by or associated with any enterprise ... to conduct or participate ... in the conduct of a ... pattern of racketeering activity." [4] Perry contends that Estee Lauder's failure to allege that Perry was "associated with" a RICO enterprise renders the complaint fatally defective. For support, Perry looks to Judge Pollack's dismissal of a RICO count in *Moss v. Morgan Stanley*, 553 F.Supp. 1347 (S.D.N.Y.), *aff'd*, 719 F.2d 5 (2d Cir.1983). The court finds *Moss* readily distinguishable from this case. The complaint in *Moss* contained no allegation of Morgan Stanley's direct or indirect participation in the activities of other defendants. *Id.* at 1362. Thus, the plaintiff in *Moss* failed to supply the allegations necessary to cross even the low threshold established by the Supreme Court's decision in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See also Strobl v. New York Mercantile Exchange*, 561 F.Supp. 379, 383 (S.D.N.Y.1983).

By contrast, Estee Lauder's complaint alleges existence of a scheme "devised by Harco, Aronson and Perry to defraud [Estee Lauder] through the submission of inflated bids and the creation of false invoices." As Perry concedes, the complaint also alleges Perry's active participation in this scheme. The court, therefore, finds that Estee Lauder's complaint describes

circumstances which, if proved, could constitute a violation of section 1962(c). *See also Moss v. Morgan Stanley*, 719 F.2d at 20–23.

■ Perry would have the court adopt the position that the complaint must allege that Estee Lauder was involved in the operation or management of the RICO enterprise. Perry's position, however, stands at odds with the clear weight of authority. Although the Second Circuit has not addressed this issue, this court finds persuasive the reasoning of the Fifth Circuit in *United States v. Elliott*, 571 F.2d 880 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978):

> The substantive prescriptions of the RICO statute apply to insiders *and outsiders*—those merely "associated with" an enterprise—who participate directly *and indirectly* in the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c).

571 F.2d at 903 (emphasis in original). *See also United States v. Bright*, 630 F.2d 804, 830 (5th Cir.1980); *United States v. Forsythe*, 560 F.2d 1127, 1135–36 (3rd Cir. 1977); *but see United States v. Bledsoe*, 674 F.2d 647, 661 (8th Cir.1982), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1983). Therefore, the court declines Perry's invitation to narrow the definition of a RICO enterprise.

■ Section 1964(c) permits recovery of treble damages for injuries arising from racketeering activity perpetrated in violation of section 1962. Perry maintains that Estee Lauder's complaint should be dismissed because the complaint fails to allege that Estee Lauder's injuries were the result of racketeering activity. Instead, Perry reads the complaint to allege crimes arising from only predicate offenses.

The court is satisfied that Estee Lauder has made the requisite allegation of injury from racketeering activity. The complaint clearly alleges injury from the scheme of bribes and kickbacks defining the racke-

---

*v. Harco Graphics, Inc.,* 558 F.Supp. 83 (S.D.N.Y. 1983).

**4.** Estee Lauder has also alleged that defendants conspired to violate section 1962(c).

teering activity in this case. That those injuries are the same sort of injuries which result from the commission of the predicate offenses does not render the complaint invalid. *See, e.g., Meineke Discount Muffler Shops, Inc. v. Noto,* 548 F.Supp. 352, 354 (E.D.N.Y.1982); *Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244, 248 (S.D.N.Y. 1981). It may well be that Estee Lauder will fail to prove that injuries were suffered as a result of racketeering activity. That failure, however, will appear only later in this litigation when Estee Lauder's proof is set against a higher threshold than that raised by Rule 12(b)(6).

In a related vein, the court notes that under Rule 12(b)(6), a motion to dismiss which looks beyond the face of the pleadings to the merits of the case may be treated as a motion for summary judgment. 6 Moore's Federal Practice, ¶ 56.03 (2d ed. 1983). *See also Boro Hall Corporation v. General Motors Corporation,* 124 F.2d 822, 823 (2d Cir.1942); *McKee v. Southern Railway Company,* 50 F.R.D. 502, 506 n. 2 (N.D.Ga.1970). By its submission of a lengthy affidavit with attached exhibits, Perry has clearly gone beyond the face of the pleadings. Even so, the court finds material issues of fact as to all issues raised in Perry's 12(b)(6) motion. This finding mirrors that made by Judge Pollack in denying a motion for summary judgment arising out of the same scheme which is the subject of this litigation. *Estee Lauder, Inc. v. Harco Graphics, Inc.,* 558 F.Supp. 83, 84 (S.D.N.Y.1983).

The court concludes that Estee Lauder's complaint satisfies the liberal pleading requirements contained in the Federal Rules of Civil Procedure.[5] Therefore, the court denies Perry's motion to dismiss the complaint.

### 2. *Motion for Summary Judgment*

■ Perry has moved for summary judgment on the ground that Estee Lauder's suit is barred by New York's statute of limitations. The RICO statute carries no statute of limitations. It is well settled that where there exists no applicable federal statute of limitations, courts will apply the most closely analogous state statute of limitations. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975); *Berry Petroleum Company v. Adams & Peck,* 518 F.2d 402, 407 (2d Cir.1975). Perry argues that the statute of limitations for civil RICO actions is the three-year limitation on suits "to recover upon a liability, penalty or forfeiture created or imposed by statute." N.Y.Civ.Prac.Law § 214(2) (McKinney Supp. 1983–84). Since this suit commenced in December 1982, over three years after the cause of action accrued, application of section 214(2) would bar this suit.

Perry reasons that since RICO is a new statute creating new opportunities for enforcing existing statutes, section 214(2) is applicable. Support for Perry's position comes from *Ingram Corp. v. J. Ray McDermott & Co., Inc.,* 495 F.Supp. 1321, 1324 n. 4 (E.D.La.1980), in which a federal district court assumed that RICO should be covered by the statute of limitations for newly created causes of action. In the alternative, Perry cites language from cases determining statutes of limitations for civil rights and securities claims. Similar language appears in New York state court decisions. *See, e.g., City of New York v. Kingsview Homes, Inc.,* 70 A.D.2d 866, 418 N.Y.S.2d 62 (1st Dep't 1979). Then, too, Perry mentions certain policies such as uniformity which would be effectuated by selecting section 214(2) as the applicable statute of limitations.

In this case, the alternative to section 214(2) is the six-year limitation for actions based upon fraud, N.Y.Civ.Prac. § 213(8) (McKinney Supp.1983–84). Estee Lauder's action is clearly one based upon fraud. The scheme allegedly created by Juda was designed to steal money from Estee Lauder through various misrepresentations—in-

---

5. Perry argues that with the other counts against it dismissed, the common law fraud count must be dismissed because of lack of complete diversity between the parties. Of course, the court's refusal to dismiss the other counts renders Perry's argument moot.

flated bids, fictitious invoices and transfers to dummy corporations. The essential question before the court, then, is whether to accept Perry's argument that RICO should qualify as a statute creating or imposing liability as defined in section 214(2).

Perry's arguments have been rejected by other district courts. In *Durante Brothers v. Flushing National Bank,* 571 F.Supp. 489 (E.D.N.Y.1983) (Nickerson, J.), the court refused to allow a plaintiff to lengthen the statute of limitations for some of its RICO claims by invoking section 214(2). Judge Nickerson reasoned that the action before him was analogous to "an action to recover any overcharge of interest or to enforce a penalty for such overcharge" and, therefore, fell within the ambit section 215(6). *Id.* at 492–93. At the same time, he observed that by its terms section 214(2) applies "except as provided in sections 214 and 215." Since section 215(6) provides a statute of limitations, section 214(2) was rendered inapplicable. Judge Nickerson also noted the applicability of the six-year limitation to a fraud count in plaintiff's complaint. *Id.* at 492.

Similarly, in *Prudential Lines v. McKeon,* No. 83 Civ. 5833, slip op. (S.D. N.Y. April 21, 1982), Judge Lowe found section 213(8) rather than section 214(2) applicable to a RICO claim. In *McKeon,* as in this case, plaintiff's complaint alleged a series of kickbacks designed to defraud the plaintiff. *Cf. State Farm Fire & Casualty Company v. Estate of Caton,* 540 F.Supp. 673, 688 (N.D.Ind.1982) (finding that applicable limitation period in case brought under RICO for fraud against insurance company was limitation period for relief against fraud rather than for statutorily imposed liability). These cases reveal a reticence to view RICO as imposing or creating new liability. Thus, this court concludes that section 214(2) is not applicable. Rather, section 213(8) applies in the instant case.

The reticence of district courts to view RICO as creating new liability is hardly unjustified. Aside from the problem of statutory construction noted by Judge Nickerson in *Durante Brothers,* it is clear as Perry emphasizes that the RICO statute differs from other statutes. What distinguishes RICO, however, is that it offers new opportunities for enforcing existing statutes. *See* Blakey and Gettings, "Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts—Criminal and Civil Remedies," 53 Temple L.Q. 1009, 1013–14 (1980). By contrast, the federal civil rights statute, 42 U.S.C. § 1983, represents a wholly new form of liability. As the Second Circuit noted in *Pauk v. Board of Trustees of City University of New York,* 654 F.2d 856 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982), section 1983 is not a statute "that provides only 'additional' remedies for well-established liabilities." *Id.* at 864. This court rejects Perry's suggestion that RICO creates or imposes liability in the same manner as section 1983.[6]

Finally, Perry inveighs against the possible confusion engendered by multiple statutes of limitation for RICO claims. Accepting the principle of multiple statutes of limitation, however, gives the RICO statute a flexibility which comports with its spirit. 53 Temple L.Q. at 1014. Imposition of a single statute of limitations for all RICO offenses would ignore considerable differences in the severity of various patterns of racketeering activity. Moreover, the court notes the impropriety of imposing judicial restrictions on the RICO statute in the form of a uniform statute of limitations. *See generally* Note, "Civil RICO: The Temptation and Impropriety of Judicial Restrictions," 95 Harv.L.Rev. 1101 (1982). Therefore, the court accepts the possibility of widely varying statutes of limitation for actions brought under RICO.

In sum, the court finds section 213(8) applicable to this lawsuit. Since Estee

---

**6.** Obviously, a statute like a securities statute creates new liability of the sort intended by section 214(2).

Lauder brought suit within six years of accrual of the cause of action, its claim is properly before the court. Accordingly, Perry's motion for summary judgment is denied.

CONCLUSION

For the reasons stated above, the court denies Perry's motions to dismiss and for summary judgment. The next pre-trial conference in this case will occur on March 23, 1984, at 2:00 p.m. in Courtroom 906.