Scileppi, J.
On January 19, 1940, Lillian Heilman (hereinafter appellant), author of the play “The Little Foxes”, entered into a contract which granted to Samuel Groldwyn, Inc. all motion picture rights in appellant’s play. Pursuant to this contract, a feature motion picture was produced and exhibited in various theaters. Thereafter, defendant-respondent, Samuel Groldwyn Productions, the successor in interest to Samuel Groldwyn, Inc. (hereinafter Groldwyn), licensed defendant-respondent, Columbia Broadcasting System, Inc. (hereinafter CBS) to exhibit the motion picture, and it has been televised over the New York station of CBS.
The relevant provisions of the contract provide:
“First: The Owner now sells and grants to the Purchaser all motion picture rights (including all sound, musical and talking motion picture rights) throughout the world in the Property, *178 forever. Included among the rights so conveyed are the following rights (but their enumeration shall not be deemed to limit the.grant first above made).
# * #
“(b) To make, exhibit and market everywhere motion pictures, trailers, sound records (in connection with motion pictures) and .stills based upon or adapted from the Property, using any methods or devices for such purposes which are now or hereafter known or used, and the Purchaser may copyright them in the name of the Purchaser or its nominees ’ ’. Article Seventh further provides that: ‘ ‘ All rights not specifically granted herein are reserved to the Owner [appellant] for her use and disposition. Said reserved rights include, but are not limited to, * * television rights direct from living actors subject to the restriction hereinafter in this Article setforth ” (emphasis added). That restriction as is relevant herein is found on page 5 of the contract and reads as follows : “ The right to televise {by broadcast, wire, or any other means or methods) motion pictures, sound or silent, based in whole or in part, on the property, is included in the motion picture rights herein granted the Purchaser [Qoldwyn], but the right to televise direct from living actors is herein reserved to the ‘ Owner ’ ” (emphasis added).
The court below granted summary judgment in favor of Goldwyn and CBS on .appellant’s .second and third causes of action for damages, injunctive relief and an accounting[1], holding that television rights were expressly granted in the 1940 agreement.
While it may be logical to assume that, had the development of television as a medium been foreseen when the contract herein was made, appellant would have sought greater remuneration for her grant of television rights, the rights of the parties must be governed by the intent of the parties as evidenced by the terms of the contract when made.
It is clear from the portions of the contract quoted above that, with the exception of appellant’s reserved right to the live production of her play on television, Coldwyn’s motion picture *179 rights included the right to exhibit it on television. In view of this express grant, the question presented is not even remotely analogous to that in Underhill v. Schenck (238 N. Y. 7) suggested as the authority for appellant’s causes of action. In Underhill a playwright granted the right to produce his play on the stage, but specifically stated in the contract that no motion picture rights were conveyed. Consequently the production of a motion picture from the play was held to be a breach of contract.
Appellant argues, however, that the grant in article Seventh was tempered by article First, paragraph (e) of article First which grants the right: “ To broadcast the motion picture version or versions of the Property or excerpts or condensations from or of the Property, including transmissions from recordings and living actors, either on sponsored or unsponsored programs, provided however, that no single broadcast shall exceed twenty (20) minutes in duration and provided further that there shall be no right to broadcast serially said motion picture or Property, and provided further that the Purchaser does not receive any cash from any sponsored program which would result in a profit to the Purchaser, but it may receive cash to cover its actual expenses in connection therewith.” (emphasis added). She asserts that the word “broadcast”, as used in paragraph (e) of article First, included television as well as radio and, therefore, in construing the contract, we must superimpose, on the general grant of television rights in article Seventh, the more specific limiting language that broadcasts could not exceed 20 minutes and could not result in a profit. This argument is untenable, for looking at the contract in its entirety, it is clear that the term “ broadcast ” as used in paragraph (e) of article First, clearly contemplated only the reservation of rights as to radio.
Paragraph (e) of article First, is similar to the right reserved by appellant in article Seventh of the contract wherein she reserved the right to 20-minute radio broadcasts for the purpose . of advertising the stage production of her play. It is also analogous to the language found in the copyright assignment which grants ‘ ‘ all rights to televise (by broadcast, wire or any other means or methods) motion pictures, based in whole or in part upon the above work, and certain radio rights in the motion *180 picture version or versions of the work, including transmissions from recording's and living actors (no single broadcast to exceed twenty (20) minutes in duration) ” (emphasis added). Consequently, there is no basis in the contract nor in the assignment for appellant’s suggested interpretation of paragraph (e) of article First, that the 20-minute limitation applied to television programs.
Moreover, an adoption of this suggested interpretation would render meaningless another part of the contract. Article Tbítth (,subd. II, par. [d]) defines “ gross receipts ” as including moneys received by Groldwyn from television use of the motion picture. This paragraph further provides that: “ No outright sales (as distinguished from licenses or other arrangements) of television rights may be made ” by Groldwyn in certain named countries without the written consent of appellant. As the Appellate Division observed: “ If the television rights were to be restricted to a 20-minute nonprofit showing, obviously no revenue could be derived therefrom and it would have been pointless to include in ‘ gross receipts ’ moneys received from television. This provision of the contract would be both unnecessary and meaningless if the contract be interpreted as plaintiff argues. Moreover, the limitation as to outright sales would serve no purpose.” (32 A D 2d 287, 289-290.)
Consequently, appellant’s contention is without merit. We find, as did the court below, that this contract gives Groldwyn the express right to exhibit the motion picture on television and to ‘ ‘ exploit in any manner or by any method or device now or hereafter known or used, motion pictures of any kind taken from or based upon the Property ”. This exploitation clause is similar to that in Bartsch v. Metro-Goldwyn-Mayer, Inc. (391 F. 2d 150, cert. den. 393 U. S. 826) where the court held that the television rights were included in the contract grant of motion picture rights (see Wexley v. KTTV, 108 F. Supp. 558, affd. 220 F. 2d 438). It is significant that the contract in the instant case, unlike that in Bartsch, also makes a .specific grant of television rights. This, then, is not a situation comparable to that of Kirke La Shelle Co. v. Armstrong Co. (263 N. Y. 79) where this court held ‘1 talkie rights ’ ’, unknown at the time of the contract, were not within the contemplation of the parties. *181 In the case before ns, television was not only known, it was specifically provided for.
Thus, construction of the entire agreement reveals neither ambiguity nor triable issues. The intent of the parties is clear from the language of the contract. G-oldwyn’s licensing of CBS was a proper exercise of its powers under the contract. This, then, was a proper case for summary judgment on behalf of the defendant.
Accordingly, the order appealed from should be affirmed.
Chief Judge Fuld and Judges Bergan, Brietel, Jasen and Gibson concur; Judge Burke taking no part.
Order affirmed, with costs.

. Appellant’s first cause of action for a declaratory judgment is not involved in this appeal.