Carl H. NEUMAN,
Plaintiff-Appellee-Cross-Appellant,

v.

Otis G. PIKE,
Defendant-Appellant-Cross-Appellee.

Nos. 207, 212, Dockets 78–7356, 7369.

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1978.

Decided Jan. 18, 1979.

Lola S. Lea, New York City (Trubin, Sillcocks, Edelman & Knapp, Diana Elzey Pinover, New York City, of counsel), for plaintiff-appellee-cross-appellant.

Joseph P. Hoey, Mineola, N. Y. (Meyer, English, Cianciulli & Perez, P. C., Bernard S. Meyer and Harold Ickes, Mineola, N. Y., of counsel), for defendant-appellant-cross-appellee.

Before MOORE and VAN GRAAFEI-LAND, Circuit Judges, and KNAPP, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

The Long Island Nursing Home Ltd., a stock corporation, has operated a psychiatric hospital in Suffolk County since 1887. In 1952 it added a nursing home which now has 80 beds, and in 1974 it added a 120-bed health-related facility. In 1975, plaintiff Neuman and defendant Pike combined their resources to obtain a controlling stock interest in this valuable property. Each acquired ownership of twenty-six percent of the outstanding shares.

On or about October 31, 1975, Neuman and his wife and Pike and his wife entered into a written agreement for the purpose of limiting the sale or transfer of their stock and of assuring orderly and beneficial corporate management. Three clauses of the contract are pertinent to this litigation. The first provides that the Neumans and the Pikes shall vote their stock to elect Neuman, Pike, and James Millard [1] as three of the five corporate directors at and after the 1976 annual meeting. The second provides that if the Neumans and Pikes are unable to agree on the manner in which their shares shall be voted, none of the shares shall be voted. The third states that the contract supersedes all prior understandings and agreements among the parties and constitutes their entire agreement.

In the judgment appealed from, the district court permanently enjoined Pike from "unreasonably withholding his consent" to a nominee of Neuman's to one of the two board memberships not covered by the contract and mandatorily enjoined Pike "to agree to a nominee of Neuman unless there are explicit and valid grounds for disapproval." The injunctions were based upon the district court's finding that Pike had violated an implied covenant in the contract that he be reasonable. We conclude that the granting of this relief was error, and we reverse.

■ Although the parties have devoted many pages of their voluminous briefs to a sometimes heated discussion of the events preceding the October contract, we see no need for an equally lengthy review of their areas of disagreement. In the main, Neuman relies upon an alleged oral understanding reached with Pike in March 1975 that they would exercise control on an equal basis and that the corporate board of directors would consist of Pike, Neuman, Millard, a designee of Pike, and a designee of Neuman. Based upon the district court's finding that, in March, Pike had no intention of sharing control, Neuman asserts a right to equitable relief under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.-10b–5. However, the written contract, which superseded the oral understanding, does not give Neuman the right to designate a director. Instead, it provides for the election of Pike, Neuman, and Millard, and, as Neuman well knew at the time he executed the contract, leaves the choice of the other two directors "up in the air." The district court correctly held that, after knowingly agreeing in writing to the designation of only three named directors, Neuman could not, almost two years later, assert a right, based upon the superseded oral agreement, to name a fourth. Certainly, the court's finding that the written agreement controlled was not clearly erroneous. *See Murtagh v. University Computing Co.,* 490 F.2d 810, 817 (5th Cir.), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 62 (1974).

■ Likewise, the district court did not err in holding that Neuman was not forced to enter into the October contract by economic duress arising out of Pike's threat to sell his stock to a third party. The district judge found that Neuman was an experienced and successful businessman who was

---

* Honorable Whitman Knapp of the United States District Court for the Southern District of New York, sitting by designation.

1. Millard is an attorney who represented both Neuman and Pike in the acquisition of much of their stock and who testified that he had an option to purchase one-third of Neuman's and Pike's shares at a very favorable price.

advised at all times by able counsel and who had adequate legal remedies available to him if he wanted to prevent Pike from violating the March oral agreement. A threatened breach of contract for which there are adequate legal remedies does not constitute duress. *Spancrete Northeast, Inc. v. K. W. Construction Corp.*, 57 A.D.2d 784, 785, 394 N.Y.S.2d 674 (1st Dept. 1977); *Colonie Construction Corp. v. De Lollo*, 25 A.D.2d 464, 465, 266 N.Y.S.2d 283 (3rd Dept. 1966), *aff'd*, 20 N.Y.2d 917, 283 N.Y.S.2d 97, 229 N.E.2d 695 (1967).

Having held, and correctly so, that the rights of the parties must be determined by their written contract rather than by the superseded oral understanding, the district court proceeded to undermine that holding by incorporating the substance of the oral agreement into the written one as an "implied covenant of reasonableness." A brief review of some background facts will illustrate why we believe this was error.

So long as Neuman and Pike together owned fifty-two percent of Long Island's stock, they could control the corporation whenever they were in agreement. If they disagreed, the one who was supported by the holders of most of the remaining forty-eight percent would prevail. Among these minority shareholders were two men who had been corporate directors for several years, John C. Robbins, Jr., and Morris T. Weeks, Jr. Together, Robbins and Weeks controlled over twenty-five percent of the company's stock. Neuman and Pike agreed at both the 1975 and 1976 annual meetings to continue these two men on the board.

Corporate control was thus being exercised in accordance with the parties' written contract. Neuman and Pike spoke as one, and their fifty-two percent ownership prevailed. Unhappily, this state of affairs was not destined to continue. Shortly before the May 1977 annual meeting, Neuman, without Pike's knowledge, sent out proxy solicitations stating that serious differences existed between Robbins and Weeks on the one hand and Neuman and Millard on the other and seeking authority to elect "two designees of Neuman and Millard" in place of Robbins and Weeks. This prompted an action by Pike, Robbins, and Weeks in the New York Supreme Court in which an order was issued preliminarily enjoining the holding of the 1977 meeting. On June 16, 1977, while the state court action was pending, Neuman commenced this action, asserting the absolute right to designate a director by virtue of the March 1975 oral agreement. It was not until the close of the trial in district court that Neuman moved to amend his complaint to assert for the first time a cause of action predicated upon an alleged implied covenant in the October 1975 written agreement.

Under New York law, two or more shareholders may agree in writing that, in exercising any voting rights, the shares held by them shall be voted as provided in the agreement. Business Corporation Law § 620(a); *Liberman v. Liberman*, 23 A.D.2d 545, 256 N.Y.S.2d 145 (1st Dept.), *appeal dismissed* 16 N.Y.2d 613, 261 N.Y. S.2d 64, 209 N.E.2d 109 (1965). It is also well established in New York that, where the expressed intention of contracting parties is clear, a contrary intent will not be created by implication. *Hellman v. Samuel Goldwyn Productions*, 26 N.Y.2d 175, 180–81, 309 N.Y.S.2d 180, 257 N.E.2d 634 (1970); *Burr v. Stenton*, 43 N.Y. 462, 464 (1871); *Emigrant Industrial Savings Bank v. One Hundred Eight West Forty Ninth Street Corp.*, 255 App.Div. 570, 575, 8 N.Y.S.2d 354 (1st Dept. 1938), *aff'd*, 280 N.Y. 791, 21 N.E.2d 620 (1939); *Chisholm v. Muller*, 234 App.Div. 102, 104, 254 N.Y.S. 76 (1st Dept. 1931); *VTR, Inc. v. Goodyear Tire & Rubber Co.*, 303 F.Supp. 773, 776–80 (S.D.N.Y. 1969).

In the instant case, it was the clearly expressed intention of the parties that when they disagreed, the forty-eight percent minority interest would be given an opportunity to participate in corporate management. It is clear beyond cavil that this is what Pike wanted and intended when he prepared the written contract and that Neuman was fully aware of this fact when he signed it. Under such circumstances, a court should not redraft the

agreement that they executed, *Roberts v. Galbreath*, 18 Misc.2d 599, 602 (Sup.Ct. 1959), *appeal dismissed*, 12 A.D.2d 611 (1st Dept. 1960), nor should it add a term which the parties have not expressed because it may deem it reasonable. *Robinson v. Estate of Hayes*, 207 A.D. 718, 721, 202 N.Y.S. 732 (3rd Dept.), *aff'd*, 239 N.Y. 512, 147 N.E. 175 (1924). A promise by the defendant should be implied only if the court may rightfully assume that the parties would have included it in their written agreement had their attention been called to it. *Simon v. Etgen*, 213 N.Y. 589, 594–95, 107 N.E. 1066 (1915); *Price v. Spielman Motor Sales Co.*, 261 App.Div. 626, 629, 26 N.Y.S.2d 836 (2d Dept. 1941). Any such assumption in this case would be completely unwarranted. Pike was unalterably opposed to Neuman's designation of a fourth director. It follows that Pike's subsequent exercise of his clearly expressed contractual right to oppose Neuman's designation of a fourth director does not violate the "good old rule that there is in every contract an implied covenant of fair dealing." *Mutual Life Insurance Co. v. Tailored Woman, Inc.*, 309 N.Y. 248, 254, 128 N.E.2d 401, 403 (1955).[2]

Inasmuch as we are reversing the judgment in Neuman's favor and dismissing his complaint, Pike's contention that the court should have directed the arbitration of the parties' differences under the arbitration clause of their written contract becomes moot.

That portion of the judgment appealed from dismissing plaintiff's first and second causes of action is affirmed. That portion granting plaintiff's third claim for relief is reversed and the complaint is dismissed with costs to defendant-appellant.

2. The district court felt that adherence to the literal terms of the written agreement would be unfair to Neuman. However, it is difficult to characterize as inequitable a contract that permits 48% of a company's shareholders to participate in the election of its directors. Such a contract demonstrates a good faith regard for the rights of minority shareholders, an attitude to be commended under New York law. *See Farmers' Loan and Trust Co. v. New York and Northern Ry. Co.*, 150 N.Y. 410, 430, 44 N.E. 1043 (1896). Yet, because of the district court's finding of a so-called covenant of reasonableness, almost half of Long Island's shareholders have in effect been disenfranchised. Instead of proposing programs that will be supported by this group, as apparently Pike has done, Neuman and Millard can, by virtue of the district court's judgment, force Pike to vote them into control. We note, for example, that following a post-judgment hearing, the district court ordered Pike to vote for the election of Neuman's cousin.