**DURANTE BROS. AND SONS, INC.,**
**Plaintiff-Appellant,**

**v.**

**FLUSHING NATIONAL BANK, Jack Farber and Richard Gelman,**
**Defendants-Appellees.**

No. 23, Docket 84–7221.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1984.

Decided Feb. 5, 1985.

Final Briefs Submitted Oct. 1, 1984.

Myron Beldock, New York City (Jon B. Levison, Edward S. Graves, Beldock Levine & Hoffman, New York City, on brief), for plaintiff-appellant.

Milton S. Gould, New York City (Fran M. Jacobs, Peter C. Neger, Shea & Gould, New York City, on brief), for defendants-appellees.

Before LUMBARD, MANSFIELD, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Durante Bros. and Sons, Inc. ("Durante"), appeals from a final judgment of the United States District Court for the Eastern District of New York, Eugene H. Nickerson, *Judge*, 571 F.Supp. 489, entered after a jury trial, dismissing its complaint against defendants Flushing National Bank ("Flushing" or the "Bank"), Jack Farber, and Richard Gelman, alleging violations of, *inter alia*, the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (1982), and the federal banking laws, 12 U.S.C. § 1, *et seq.* (1982). The district court granted summary judgment dismissing certain of the RICO and banking law claims on the grounds that they were barred by statutes of limitations; it directed a verdict as to certain other claims for lack of proof; and it set aside a jury verdict against Flushing for fraud, on the ground that that verdict was unsupportable in light of the jury's verdict in favor of Farber on essentially the same claim of fraud. On appeal, Durante contends principally that the district court applied the incorrect statutes of limitations and that it erred in dismissing Durante's other claims for failure of proof and for inconsistency in the jury's verdicts. We find merit only in the contention that the court erred in dismissing the RICO claims on statute of limitations grounds, and we vacate the judgment dismissing counts 1, 3, and 5 of the complaint and remand for further proceedings on those claims.

## I. BACKGROUND

### A. *The Complaint*

The action, commenced on May 21, 1980, centers on certain loans made by Flushing from 1974 through 1976 to (1) Durante, (2) Louis Durante, Sr. ("Louis Sr."), father of Durante's sole stockholder, and (3) Jerder Realty Services, Inc. ("Jerder"), a real estate development company of which Louis Sr. was a principal. As set forth in somewhat greater detail in the discussion sections below, the amended complaint ("complaint") alleged that as the Bank's loans to Jerder soured, the Bank, Farber (its chairman, chief executive officer, and controlling shareholder), and Gelman (its executive vice president) conspired to offset Flushing's anticipated losses by causing the Bank to make loans to Durante at usurious rates of interest.

The complaint contained six counts (1–6) asserting federal claims and eleven counts (7–17) asserting state law claims. The federal law claims included the assertions that various actions by the defendants constituted the collection of unlawful debts, in violation of RICO, 18 U.S.C. §§ 1962(a), (c), and (d) (counts 1, 3, and 5); that defendants caused Flushing to charge unlawful rates of interest on the loans, in violation of 12 U.S.C. § 85, and to falsify its records and its reports to regulatory agencies, in violation of 12 U.S.C. § 161 and 18 U.S.C. §§ 1005 and 1014 (1982) (counts 2 and 4); and that in mailing monthly bank statements and a letter to Durante, defendants repeatedly violated the mail fraud statute, 18 U.S.C. § 1341 (1982), and thereby engaged in a pattern of racketeering activity, in violation of RICO, 18 U.S.C. §§ 1962(a), (c), and (d) (count 6).

### B. *The Pretrial Rulings*

Prior to trial, defendants moved to dismiss the six federal counts. They contended that counts 1, 3, and 5 were barred by the one-year statute of limitations found in N.Y.Civ.Prac. Law ("CPLR") § 215(6) (McKinney 1972 & Supp. 1983–1984) and

that counts 2 and 4 either were barred by the two-year statute of limitations provided by 12 U.S.C. § 86 or were brought under provisions that gave Durante no standing to sue. They contended that count 6 failed to state a claim upon which relief may be granted under RICO because the alleged mailings were not for the purpose of furthering the alleged scheme and hence did not violate the mail fraud statute, and therefore count 6 did not allege valid predicate acts upon which liability for "racketeering activity" could be premised. The district court granted the motions to dismiss as to counts 1 through 5, but denied the motion as to count 6.

In a memorandum and order dated September 27, 1983, reported at 571 F.Supp. 489 (E.D.N.Y.1983), the court upheld the defendants' statute of limitations defenses and deferred decision on the issue of standing. With regard to RICO counts 1, 3, and 5, which asserted that defendants had engaged in the collection of unlawful debts, the court noted that RICO itself contains no statute of limitations provisions, and it therefore sought the most appropriate state statute of limitations. On the premise that an action based on the collection of an unlawful debt was most like a state law action for usury, the court concluded that the appropriate statute of limitations was that found in CPLR § 215(6), which provides that actions to recover any overcharge of interest or to enforce a penalty for such an overcharge must be commenced within one year of the accrual of the cause of action. Since suit had been commenced some 2½ years after the last alleged interest overpayment was made, the court found counts 1, 3, and 5 barred.

The court rejected defendants' contention that count 6 of the complaint failed to state a claim under RICO. It ruled that the matter of whether or not the mailings of bank statements and letters were "for the purpose of executing" the alleged scheme was a question of fact that could not be decided on a motion for summary judgment.

As to counts 2 and 4, the court held that the portions of those counts that claimed that Durante had been charged an unlawful rate of interest in violation of 12 U.S.C. § 85 were analogous to a claim to recover damages arising out of the payment of usurious interest, and it therefore applied the one-year statute of limitations found in § 215(6). As to the portions of counts 2 and 4 that asserted that defendants' falsification of records and reports violated 12 U.S.C. § 161 and 18 U.S.C. §§ 1005 and 1014, the court deferred its ruling on defendants' contention that Durante had no standing to complain of such acts, observing that the papers before it did not indicate that there was any causal connection between the alleged falsifications and the injury complained of. The court stated that it would rule on the motion to dismiss these claims after Durante had made an offer of proof as to causation.

On October 3, 1983, just prior to the start of trial, the court held a hearing to permit Durante to make its offer of proof. Finding the offer insufficient, the court dismissed the remainder of counts 2 and 4. In addition, the court dismissed counts 10, 11, and 13 as state law usury claims barred by the statute of limitations, CPLR § 215(6).

## C. Trial, the Directed Verdicts, and Judgment NOV

The parties proceeded to trial on the remaining counts of the complaint. At the close of the evidence, the court directed a verdict for the defendants on counts 7 (conspiracy), 12 (duress), 14 (breach of fiduciary duty), 15 (negligence), 16 (breach of contract), and 17 (negligent misrepresentation). The only counts submitted to the jury were counts 6 (RICO racketeering), 8 (fraud by Farber), and 9 (fraud by the Bank).

The jury, after deliberating for two days, returned a verdict in favor of the defendants on count 6, a verdict in favor of Farber on count 8, and a verdict of $175,000 in favor of Durante against the Bank on count 9. Flushing moved for judgment notwithstanding the verdict against it or

for a new trial. By a memorandum and order dated January 17, 1984, the court set aside the verdict on the ground that it was unsupportable in light of the jury's conclusion that Durante had failed to prove fraud on the part of Farber. The court declined to order a new trial, and judgment was entered in favor of defendants, dismissing the complaint in its entirety.

### D. *Issues on Appeal*

On this appeal, Durante contends principally (1) that the court applied the wrong statutes of limitations in dismissing the RICO claims asserted in counts 1, 3, and 5 of the complaint and the banking claims under 12 U.S.C. § 93 asserted in counts 2 and 4; (2) that the court erred in dismissing the remainder of counts 2 and 4 for lack of causation; (3) that the jury's verdict against the Bank on count 9 was not inconsistent with its verdict in favor of Farber on count 8, but that if there was an inconsistency, it did not warrant entry of judgment notwithstanding the verdict ("judgment NOV") but only the granting of a new trial; and (4) that there was sufficient evidence supporting counts 7, 12, 16, and 17 to require their submission to the jury. In addition, Durante asserts various claims of error in the court's evidentiary rulings and instructions to the jury. It asks that we remand for a new trial of all counts except counts 10, 11, and 13, or alternatively that we reinstate the verdict against the Bank on count 9.

We find merit only in the contention that the court applied the wrong statute of limitations to the RICO claims asserted in counts 1, 3, and 5. Accordingly, the judgment dismissing those counts is vacated and the matter is remanded for further proceedings as set forth below.

### II. THE BANKING LAW CLAIMS

In counts 2 and 4, Durante claimed that Farber and Gelman (A) violated the federal banking laws by causing Flushing to charge more than the lawful rate of interest allowed under 12 U.S.C. § 85, and (B) caused the Bank to make false reports to banking authorities in violation of 12 U.S.C. § 161 and 18 U.S.C. §§ 1005 and 1014. We conclude that insofar as these counts were grounded in the alleged violation of § 85, they were time-barred; insofar as they were based on the other claimed violations, they were properly dismissed for lack of any showing of causation between the alleged violation and the claimed injury to Durante.

### A. *Statute of Limitations*

Section 85 of 12 U.S.C., through reference to state laws and Federal Reserve Bank rates, sets a ceiling on the rate of interest that a national bank may charge. Section 86 of 12 U.S.C. allows an individual who has paid interest at a rate in excess of that allowed under § 85 to bring an action to recover from the bank twice the amount of interest paid. Defendants contend that § 86's action to recover double interest is the exclusive remedy for a violation of § 85, and they point out that § 86 provides that such an action must be commenced within two years of the occurrence of the usurious transaction. Since the present action was commenced some 2½ years after Durante made its last payment of allegedly usurious interest, Durante argues that counts 2 and 4 should be deemed brought under 12 U.S.C. § 93, which provides that any person may sue the director of a national bank for damages sustained in consequence of a knowing violation of the federal banking laws. Since Title 12 contains no provision specifying a statute of limitations with respect to an action brought under § 93, Durante contends that the appropriate state statute of limitations was the three-year period provided by CPLR § 214(2) (McKinney Supp. 1983–1984) for actions brought to enforce a liability created by statute.

The district court found it unnecessary to determine whether § 86 provides the exclusive remedy for a violation of § 85, since it concluded that even if counts 2 and 4 were deemed brought under § 93, they were, to the extent that they relied on the claimed violation of § 85, time-barred because the

most analogous state statute of limitations was the one-year period provided by CPLR § 215(6) for claims of usury. Though we disagree with the court's application of the CPLR, we too find it unnecessary to determine the exclusiveness of the remedy provided by § 86, since we conclude that even in a suit brought under § 93, the time within which a claim dependent on a violation of § 85 must be brought is governed by 12 U.S.C. § 86.

Where Congress has created a private right of action but has not specifically stated the time within which the action may be brought, the court must seek out the most appropriate statute of limitations. In so doing, it should look first to federal law for a relevant limitations provision, turning to state law only if there is no relevant federal period. *See Board of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980) (appropriate state period applied *"since there was no* specifically stated or *otherwise relevant federal statute of limitations* for the federal substantive claim created by Congress" (emphasis added)); *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) (same).

█ In the present action, the basis for the § 93 claim is solely that the individual defendants knowingly violated § 85. While Durante's *ad damnum* seeks more than the amount that would be recoverable under § 86, it is nevertheless clear that its § 93 claim "aris[es] from the charging of excessive interest" in violation of § 85. (Durante brief on appeal at 25.) Since Congress has specified in § 86 the period within which the actions there authorized to redress violations ·of § 85 may be brought, the period provided by § 86 must be considered relevant to any claim that is based solely on a violation of § 85.

We conclude, therefore, that, to the extent that counts 2 and 4 were brought under 12 U.S.C. § 93 to redress a violation of § 85, the district court should have applied the two-year limitations period found in 12 U.S.C. § 86. Since the action was not commenced within two years of the al-

legedly usurious transaction, those portions of counts 2 and 4 were, however, properly dismissed.

## B. *Causation*

█ The other statutes relied on in counts 2 and 4 were 12 U.S.C. § 161, which requires national banks to make reports to the Comptroller of the Currency setting forth their resources and liabilities; 18 U.S.C. § 1005, which prohibits the making of false entries in the books, reports, or statements of a national bank with intent to defraud; and 18 U.S.C. § 1014, which prohibits the knowing making of a false statement or report for the purpose of influencing action on a loan by certain federal agencies. Section 503 of 12 U.S.C. provides that any individual officer or director of a national bank who knowingly violates or permits the violation of, *inter alia,* 18 U.S.C. §§ 1005 and 1014 may be held personally liable to any person who sustained injuries "in consequence of such violation." 12 U.S.C. § 503 (1982).

Durante's theory was that in 1975, Jerder needed more funds; that the Bank had surpassed the legal limit on the amount it could lend Jerder; and that the Bank therefore loaned money to Louis Sr., which would be used by Jerder. Durante asserted that as part of their scheme, and to ensure the collectability of the loan to Louis Sr., defendants falsely promised in the fall of 1975 that the Bank would lend Durante $100,000, in addition to amounts already loaned to it, and thereafter refused to fulfill the promise unless Durante would give the Bank a mortgage in an amount that covered not only Durante's indebtedness but also that of Louis Sr. Durante claimed to have been injured by the Bank's promise because on the basis of that promise, Durante had committed itself to purchase certain property; the Bank's subsequently imposed condition meant that Durante would be forced either to forgo the loan, and thereby be overextended because of the commitment to purchase the property, or to undertake repayment of Louis Sr.'s loan and be overextended because of

that obligation. Durante accepted the loan, gave Flushing a mortgage in 1976 covering its own and Louis Sr.'s indebtedness, and made interest payments on the total amount until December 1977. It made no payments thereafter, and in April 1978, the Bank commenced foreclosure proceedings. The district court asked Durante to make an offer of proof as to its contention that defendants' violations of the reporting statutes were the cause of its claimed injury.

Durante offered to prove that the Bank's reports to the Comptroller of the Currency did not reveal that the loan to Louis Sr. was really for the use of Jerder. It argued that had the reports revealed that fact, the Comptroller would not have permitted the situation to continue, perhaps even dissolving the Bank, and the Bank thus would not have been able in the fall of 1975 to represent falsely to Durante that it would lend Durante $100,000, thereby causing the latter to overextend itself and be vulnerable to the Bank's demand for an excessive mortgage.

The district court properly rejected Durante's offer of proof on the ground that it provided no indication that the claimed injury was caused by the alleged false reporting. Although "the provisions of [Title 12] requiring periodic examinations and reports and the powers of the Comptroller are designed to insure prompt discovery of violations of the [federal banking laws] and in that event prompt remedial action by the Comptroller," *Deitrick v. Greaney*, 309 U.S. 190, 195, 60 S.Ct. 480, 482, 84 L.Ed. 694 (1940), we agree with the district court that Durante showed no basis for its assertion that truthful reporting by Flushing would have led the Comptroller to dissolve the Bank or to take other action that would have prevented Flushing's promising to lend funds to Durante. Although Durante's counsel suggested that he might soon have documents indicating that "apparently there were instances where the comptroller did that type of thing," no such proof was offered and there was no suggestion that Durante would call any witness from the office of the Comptroller to testify that reports reflecting the facts as Durante alleged them would have led to any particular action by the Comptroller. In the circumstances, Durante's claim that the alleged violations of §§ 161, 1005, and 1014 caused its injuries was entirely speculative. These portions of counts 2 and 4 were properly dismissed.

### III. THE RICO CLAIMS

Durante's claim that it is entitled to pursue various counts asserting claims under RICO presents greater difficulties. Counts 1, 3, and 5 asserted that defendants had engaged in the collection of unlawful debt; count 6 alleged that defendants had engaged in a pattern of racketeering activity. As a preliminary matter, we must determine what effect our recent trilogy of decisions in *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984) (*"Sedima"*), *cert. granted*, — U.S. —, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985); *Bankers Trust v. Rhoades*, 741 F.2d 511 (2d Cir.1984) (*"Bankers Trust"*), *petition for cert. filed*, 53 U.S.L.W. 2063 (U.S. Oct. 24, 1984); and *Furman v. Cirrito*, 741 F.2d 524 (2d Cir. 1984), *petition for cert. filed*, 53 U.S.L.W. 2063 (U.S. Oct. 15, 1984), has on the right of Durante to maintain each of these claims.

We conclude that, in light of the *Sedima* trilogy, Durante's count 6 failed to state a claim upon which relief could be granted. Counts 1, 3, and 5, however, are unaffected by the *Sedima* trilogy, and we conclude that those counts were not time-barred.

### A. *The Effect of the* Sedima *Trilogy*

RICO grants a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) ("civil RICO"). Section 1962 makes it unlawful, *inter alia*, (1) to use "income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt," in the operation of any enterprise whose activities affect interstate commerce, 18 U.S.C. § 1962(a);

or (2) to participate, as a person employed by or associated with an enterprise whose activities affect interstate commerce, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt, *id.* § 1962(c); or (3) to conspire to violate the foregoing provisions, *id.* § 1962(d).

"[E]nterprise" is defined to "include[ ] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). "[R]acketeering activity" is defined to mean any of a number of specified acts that would constitute certain state or federal crimes, *id.* § 1961(1); and a "pattern of racketeering activity" is defined to require at least two acts of racketeering activity within a ten-year period, *id.* § 1961(5). "[U]nlawful debt" is defined, in pertinent part, as follows:

> "unlawful debt" means a debt (A) ... which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with ... the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

*Id.* § 1961(6).

The *Sedima* trilogy analyzed the requirements for an action under civil RICO. *Bankers Trust* focused on § 1964(c)'s restriction of the right of private action to persons injured "by reason of a violation of section 1962," and recognized that violation of the latter section encompasses a number of factors, including, under the complaint filed in that case, a pattern of racketeering activity. *Bankers Trust* held, therefore, that the plaintiff must establish that the injury complained of was caused by the pattern of racketeering activity, and that it was not sufficient to show that the injury resulted from the individual predicate acts, even if those acts constituted a pattern of racketeering activity. *Sedima* likewise held that a complaint that alleges injury

resulting only from the predicate acts rather than from the pattern does not state a claim under civil RICO. In addition, for reasons described in greater detail in Part III.A.2. below, *Sedima* ruled that a civil action under RICO based on a pattern of racketeering activity may not be maintained in the absence of criminal convictions on the predicate acts that constitute the pattern. The panel in *Furman v. Cirrito,* though disagreeing with both grounds of the *Sedima* decision, adhered to the law of the Circuit as established by *Sedima* and *Bankers Trust.*

### 1. *Count 6*

■ The direct application of the *Sedima* trilogy to the present case is limited, for none of those cases involved or purported to deal with a claim based on the alleged collection of an unlawful debt. *See, e.g., Bankers Trust,* 741 F.2d at 515 n. 3. In the present case, only count 6 alleged that the defendants had engaged in a pattern of racketeering activity. Although the jury found against Durante on that count, we nevertheless address count 6 in light of *Sedima et al.* since Durante has asked that a new trial include count 6.

The rule established by *Sedima* and *Bankers Trust,* that the complaint must allege injury resulting from the *pattern* of racketeering activity, eliminates count 6 of the Durante complaint. Count 6 asserted that the pattern of racketeering activity consisted principally of defendants' mailing from January 1976 through February 1978 of monthly statements as to the status of Durante's account. Plainly the injuries claimed by Durante, *i.e.,* the 1975 overextension in committing to purchase property or its later payment of excessive interest, could not have been the result of the pattern of the Bank's sending monthly account statements. Nor did count 6 satisfy *Sedima's* requirement that the defendants have been convicted of the underlying predicate acts. Accordingly, we affirm the dismissal of count 6.

### 2. Counts 1, 3, and 5

█ Sedima's ruling that in order to succeed in a civil RICO case the plaintiff must show that the defendants have been convicted of the predicate acts that constitute the alleged racketeering activity seems to have little application to counts 1, 3, and 5 of the present complaint, which do not assert that there was any racketeering activity but only that the defendants engaged in the collection of a usurious "unlawful debt." We see no basis for extending the conviction requirement to the latter type of civil RICO action.

The Sedima ruling was based largely on the language used by Congress to define racketeering activity. Section 1961(1) defines racketeering activity in terms of "offenses," "indictable acts," and acts "chargeable under State law and punishable by imprisonment for more than one year." The Sedima panel reasoned that these specifications implied that an act was not racketeering activity unless it was a criminal offense. The panel further noted that the establishment of a criminal offense requires proof beyond a reasonable doubt; that Congress apparently assumed that the quantum of proof required in a civil RICO action would be the normal preponderance; and that a jury would experience inordinate difficulty in applying these two quanta of proof to different elements of a single case. Sedima concluded that the reconciliation of these factors required the inference that Congress intended that, in a civil RICO action, the plaintiff must prove that the defendants had already been convicted of the crimes constituting the predicate acts. 741 F.2d at 499–503. For two reasons we conclude that this reasoning is not applicable to a civil RICO claim based on collection of a debt characterized in § 1961(6) as unlawful because of its usurious nature.

First, unlike § 1961(1)'s definition of racketeering activity, § 1961(6)'s definition of unlawful debt does not refer either to "offenses" or to acts that are "indictable," "chargeable," or "punishable." Nor, insofar as is pertinent here, does it refer to conduct that is unlawful. To the extent that the definition focuses on usurious transactions (as contrasted with its concern with "gambling activity ... in violation of the law"), it refers to debt that is merely "*unenforceable* under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury." 18 U.S.C. § 1961(6) (emphasis added). The absence of any reference to unlawful, indictable, or punishable acts removes any suggestion (1) that criminal activity need be proven, or (2) that the usurious character of the debt—or any other element of the claim—need be proven by other than a preponderance of the evidence. In the circumstances, there is no basis for inferring that success on a civil RICO claim based on the collection of a usurious debt requires proof of a prior conviction of the defendants for usury.

Second, the final requirement of § 1961(6) strongly indicates that a requirement of proof of a prior conviction was not intended. Under § 1961(6), assuming all of the other criteria of the section are met (*see* below), a usurious debt is an "unlawful debt" where the usurious rate "is at least twice the enforceable rate." This definition includes debts that would be usurious under the laws of several states, and hence unenforceable, but that would not violate those state's *criminal* usury laws. For example, in 1970, when RICO was enacted, New York's interest ceiling was 7.5%, N.Y. Gen.Oblig.Law § 5–501, Banking Board General Regulation, Part 4, § 4.1 (McKinney Supp.1969–1970); a rate of 15% would thus have been usurious and unenforceable; and a loan charging 15% interest could have been an unlawful debt within the meaning of that section. Yet there could have been no conviction on the basis of that loan because an interest charge did not violate the state's criminal usury laws unless the rate exceeded 25%. N.Y.Penal Law § 190.40 (McKinney 1967). *See also* Fla.Stat. §§ 687.03, 687.04, 687.07 (1966) (unenforceable if more than 10%, criminal if more than 25%); Mich.Comp.Laws Ann. §§ 438.31, 438.32, 438.41 (West 1970) (unenforceable if more than 7%, criminal if more than 25%). If, therefore, there were a re-

quirement that a civil RICO plaintiff seeking redress for collection of a usurious loan prove that the defendants had been convicted of usury, it is apparent that some of the loan transactions that Congress intended § 1961(6) to reach would be immunized.

Accordingly, we conclude that the *Sedima* ruling that a civil RICO claim based upon racketeering activity requires proof of a prior conviction does not apply to a civil RICO claim based upon the collection of a debt characterized by § 1961(6) as unlawful because it is usurious.

■ On the other hand, the rulings in *Sedima* and *Bankers Trust* that a civil RICO plaintiff must show that the proprietary injury for which it seeks recovery was caused by a violation of § 1962 are plainly applicable to counts 1, 3, and 5, for § 1964(c) does not by its terms distinguish between actions based on alleged racketeering activity and those based on collection of an unlawful debt. In the present case, counts 1 and 3 invoked §§ 1962(a), (c), and (d); count 5 invoked §§ 1962(c) and (d). In the context of the allegations made here, therefore, success on these counts would require proof that, *inter alia*, (1) there was a RICO enterprise, (2) its activities affected interstate commerce, (3) the individual defendants were employed by or associated with the enterprise, (4) the Bank used, in the operation of the enterprise, income derived from the collection of unlawful debt, and (5) the individual defendants participated in the conduct of the affairs of the enterprise through collection of unlawful debt. 18 U.S.C. § 1962(a) and (c). In addition, to prove that what was collected was an unlawful debt within the meaning of RICO, Durante would have to show that (6) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (7) the debt was incurred in connection with "the business of lending money ... at a [usurious] rate," and (8) the usurious rate was at least twice the enforceable rate. *Id.* § 1961(6). And Durante would have to show that (9) as a result of the above confluence of factors,

(10) it was injured in its business or property. *Id.* § 1964(c).

Absent proof of any one of these ten elements, Durante could not succeed on count 1 or count 3; absent proof of any of the elements numbered 1–3 or 5–10, it could not succeed on count 5. These requirements have implications for both the statute of limitations question and the proceedings on remand.

## B. *Statute of Limitations*

■ Since RICO does not contain its own statute of limitations, and there is no other apparently relevant federal statute of limitations for RICO claims, the court was required to apply the most appropriate limitations period provided by state law. *See Board of Regents v. Tomanio*, 446 U.S. at 485, 100 S.Ct. at 1795; *Johnson v. Railway Express Agency*, 421 U.S. at 462, 95 S.Ct. at 1721. Here the district court dismissed counts 1, 3, and 5 on the ground that they were barred by the one-year statute of limitations found in CPLR § 215(6), which governs actions to recover any overcharge of interest or to enforce a penalty for such an overcharge. This was not the appropriate statute of limitations.

The above listing of elements that must be proven in order to establish civil RICO liability for collection of an unlawful debt makes clear that the civil RICO action is not simply an action to recover excessive interest or to enforce a penalty for the overcharge. RICO is concerned with evils far more significant than the simple practice of usury. Based on its findings that organized crime uses money gained through illegal activities such as loansharking to infiltrate legitimate businesses, Congress enacted RICO in an effort "to seek the eradication of organized crime in the United States ... by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922 (1970) (Statement of Findings and Purpose), *reprinted in* 1970 U.S.Code

Cong. & Ad.News 1073. Thus, the RICO provisions require proof of such matters as the use of the ill-gotten funds in the operations of an enterprise that affects interstate commerce and the fact that the debt was incurred in connection with "the business of" usury.

In contrast, a state law claim governed by § 215(6) could be established without proof of nine of the ten listed elements of the civil RICO claim. There being no state law analog to the present civil RICO claim, we conclude that the most appropriate state statute of limitations is that found in CPLR § 214(2), governing actions to enforce a liability created by statute. *Accord Compton v. Ide,* 732 F.2d 1429, 1433 (9th Cir.1984) (applying to civil RICO action California's limitation period for actions based on statute); *see also Klimczak v. Connrex Corp.,* 49 A.D.2d 1031, 1031–32, 374 N.Y. S.2d 497, 498 (4th Dep't 1975).

CPLR § 214(2) provides that actions brought to enforce a liability created by statute must be commenced within three years of the accrual of the cause of action. The present action was commenced in May 1980, less than three years after the last interest payment was made by Durante on the allegedly unlawful debt collected by the defendants. We therefore vacate the judgment insofar as it dismissed counts 1, 3, and 5, and remand those counts for further proceedings, as set forth below.

### C. *Proceedings on Remand*

Many of the civil RICO elements listed in part III.A.2. are relatively straightforward, and we conclude that, given the degree of liberal interpretation required by *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), all were adequately pleaded. The complaint adequately described Flushing as an enterprise, within the meaning of RICO, whose activities affected interstate commerce; alleged that the Bank used income derived from its collection of usurious loans in the operations of its business, and that the individual defendants employed by the Bank participated in the collection of those usurious loans; and alleged that Durante had been injured in its property as a result of the collection of the usurious loans. The problematical question, in our view, is whether Durante can show that its loans were "unlawful debt" within the meaning of RICO, for to come within that section, the loan must not only have been usurious, it must have (1) carried twice the enforceable interest rate, and (2) been incurred in connection with "the business of" lending money at a usurious rate. 18 U.S.C. § 1961(6).

As to the first of these issues, the complaint appears to suggest obliquely, rather than to allege precisely, that the interest charged on loans to Durante was twice the enforceable rate. Thus, it described the principal of loans from Flushing to Durante and the principal on which Durante was required to pay interest; but it did not specify the rate of interest charged. In response to defendants' summary judgment motions, Durante asserted expressly that the Bank had charged Durante interest at twice the enforceable rate, but again it did not specify what rate it was charged. Apparently elaborating on its conclusory assertion, Durante stated that

> [t]he Bank engaged in the business of lending money at a rate usurious under State and Federal law by, among other things, requiring borrowers to purchase non-interest bearing certificates of deposit and charging for executives' time, legal fees and closing costs.

If, on remand, the court determines that the inclusion of such charges is the sole basis for the assertion that the loan to Durante carried twice the enforceable rate of interest, and, if under New York law, some of these charges are not properly characterized as interest in determining whether a loan is usurious, *see King v. American Home Sales Corp.,* 15 A.D.2d 932, 932–33, 226 N.Y.S.2d 55, 56 (2d Dep't 1962), *aff'd,* 13 N.Y.2d 780, 192 N.E.2d 172, 242 N.Y.S.2d 216 (1963), it would appear that counts 1, 3, and 5 may be subject to summary dismissal.

Perhaps more importantly, the complaint did not unequivocally allege that the de-

fendants were in the business of making usurious loans. Rather, it alleged that "[t]he Bank ... participated in a scheme or business of making or collecting usurious loans" (complaint ¶ 6), and that Farber and Gelman "caused the Bank to participate in a scheme or business of making or collecting usurious loans" (complaint ¶¶ 7, 8). Given the language and purpose of RICO, counts 1, 3, and 5 may well be vulnerable to summary disposition, for if Durante can show only that the defendants engaged in a "scheme," but not that they were in "the business of" making usurious loans, its proof will not satisfy the statute.

As discussed above, one of the impetuses for the enactment of RICO was the finding that organized crime, through the funds gained from such activities as loan sharking, was infiltrating legitimate businesses. The inclusion of "collection of unlawful debt" as a major predicate for RICO liability seems to have been an explicit recognition of the evils of loan sharking, and there is no indication that Congress was taking aim at legitimate banking institutions. Rather, the legislative history indicates that the purpose of requiring, in the definition of "unlawful debt," that the usurious rate be at least twice the enforceable rate was "to limit the effect of this definition to cases of clear 'loan-sharking,'" S.Rep. No. 91–617, 91st Cong., 1st Sess. 158 (1969), and to "eliminate[ ] the possibility of 'inadvertent' usury," *id.* at 159. The requirement that the loan have been incurred in connection with "the business of" making usurious loans seems aimed at the same goal, *i.e.*, the exclusion from the scope of the statute of occasional usurious transactions by one not in the business of loan sharking. As the legislative history indicates in discussing the concept of "pattern" of racketeering activity, "[t]he target of [RICO] is ... not sporadic activity." *Id.* at 158. *Cf. United States v. Salinas*, 564 F.2d 688, 691 (5th Cir.1977) (inferring that the reason Congress included "the business of" gambling in § 1961(6) "was that it sought to punish only large scale gambling operations involving 'organized crime' as contrasted with small time gambling."),

*cert. denied*, 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 800 (1978).

The complaint gives no promise that Durante will be able to establish that Flushing or the individual defendants were engaged in "the business of" making usurious transactions. Its allegation of "a scheme" or business was equivocal, and it contained no indication that defendants had engaged in any usurious dealing other than that described in the complaint. The factual record in the district court was not developed on this issue because defendants' motion for summary judgment on counts 1, 3, and 5 was limited to their statute of limitations defense and was granted on that ground. Durante thus apparently had no occasion to come forward with a substantial showing that the defendants were "in the business" of making usurious loans.

We would suggest that on remand, the district court be willing to entertain a new motion for summary judgment by defendants, focusing on the question of the engagement of the defendants in "the business of usury." If Durante cannot show that there is a genuine issue of material fact as to that question, counts 1, 3, and 5 should be dismissed. We leave for determination by the district court in the first instance the precise parameters of "the business" of usury as intended by Congress in § 1961(6).

## IV. OTHER CONTENTIONS

We have considered all of Durante's other contentions on appeal and have found them lacking in merit. None of them requires extended discussion.

### A. *The Judgment NOV on Count 9*

■ Count 9 alleged that the Bank was liable to Durante for fraud on the basis of the false promise in October 1975 to lend Durante $100,000. Count 8 alleged that Farber was liable to Durante for fraud on the same basis. The jury found for Farber on count 8 but against the Bank on count 9. The district court granted judgment NOV because it concluded that (1) virtually all of

Durante's evidence of fraud attributed the alleged misrepresentations to Farber; (2) the jury plainly found that evidence to be less than "clear and convincing," *see Ajax Hardware Manufacturing Corp. v. Industrial Plants Corp.*, 569 F.2d 181, 186 (2d Cir.1977) (under New York law, fraud must be proved by clear and convincing evidence), *Manchel v. Kasdan*, 286 A.D. 483, 484, 144 N.Y.S.2d 694, 695 (1st Dep't 1955) (per curiam) ("the inference of fraud [must be] unequivocal"), *aff'd*, 1 N.Y.2d 734, 134 N.E.2d 687, 151 N.Y.S.2d 940 (1956); and (3) absent the misrepresentations attributed to Farber, there was insufficient proof from which the jury could properly infer fraud on the part of the Bank. Durante attacks the court's conclusion that the proof of non-Farber misrepresentations was insufficient and argues that even if the court was correct in that conclusion it should have granted only a new trial and not judgment NOV. We are unpersuaded.

Our review of the trial record convinces us that the vast bulk of the proof as to misrepresentations in connection with the alleged October 1975 promise to lend, and as to Durante's reliance, charged those misrepresentations to Farber. The remaining evidence as to statements by other Bank officials, even viewed in the light most favorable to Durante and with all permissible inferences drawn in its favor, *Saloomey v. Jeppesen & Co.*, 707 F.2d 671, 677 (2d Cir.1983); *Mattivi v. South African Marine Corp. "Huguenot"*, 618 F.2d 163, 167–68 (2d Cir.1980), was woefully inadequate to support a claim of fraud. The district court did not err in concluding that, given the verdict in favor of Farber on count 8, the claim of fraud against the Bank had not been proven by clear and convincing evidence.

Having determined that the verdict against the Bank on count 9 could not have been rationally arrived at, the trial judge had discretion either to order a new trial or to enter judgment NOV. *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2538, at 605–06 (1971). We see no abuse of discretion in his choice of the latter action. There was no error in the conduct of the trial that could have affected the jury's assessment of the case against Farber, and there was thus no reason to give Durante a second opportunity to prove its claim against the Bank.

### B. *The Directed Verdicts*

■ Durante claims that the district court erred in not permitting counts 7 (conspiracy), 12 (duress), 16 (breach of contract), and 17 (negligent misrepresentation) to go to the jury. We find no error.

Count 7 of the complaint charged Farber and Gelman with conspiracy to commit the acts alleged in counts 1 through 6. Those counts alleged that Farber and Gelman had entered into and acted in furtherance of a conspiracy to offset the Bank's anticipated losses on the Jerder loans by making usurious loans to Durante. Count 7 added no new allegations to those of counts 1–6 except to reiterate that Farber and Gelman had conspired to commit the acts heretofore described. Count 7 was properly dismissed, either as duplicative of counts 1–6, or as failing to state a claim on which relief may be granted since New York law does not recognize a substantive tort of conspiracy, *Ahmed v. National Bank of Pakistan*, 572 F.Supp. 550, 554–55 (S.D.N.Y. 1983); *Powell v. Kopman*, 511 F.Supp. 700, 704 (S.D.N.Y.1981); *ABKCO Industries v. Lennon*, 52 A.D.2d 435, 441, 384 N.Y.S.2d 781, 784 (1st Dep't 1976).

■ Count 12, charging that the 1976 mortgage agreement was void because of duress, was properly dismissed as a matter of law. In order to prevail on such a claim the plaintiff must show, *inter alia*, that it had available no legal remedies to avoid the duress, *Neuman v. Pike*, 591 F.2d 191, 194 (2d Cir.1979); *First National Bank of Cincinnati v. Pepper*, 454 F.2d 626, 633–34 (2d Cir.1972), and that it acted promptly to repudiate the contract, *Scientific Holding Co. v. Plessey, Inc.*, 510 F.2d 15, 23 (2d Cir.1974); *see also International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries*, 544 F.2d 105, 108 (2d Cir.1976). Durante showed neither. There was no

basis for inferring that, if the defendants' conduct was indeed improperly coercive, Durantè could not have resorted to legal process to enforce enforceable agreements or fend off unwarranted punitive actions by the Bank. Further, not having resorted to legal process, Durante did not promptly repudiate the 1976 mortgage agreement, but instead made payments on the mortgage until December 1977 and did not bring suit until mid-1980.

Count 16, which alleged that the Bank had breached its October 1975 promise to lend Durante $100,000, was properly dismissed for lack of proof that there existed an enforceable agreement. There is no enforceable agreement if the parties have failed to agree on all of its essential terms or if some of the terms are too indefinite to be enforceable. *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 462 F.2d 673, 676 (2d Cir.1972); *see Brookhaven Housing Coalition v. Solomon*, 583 F.2d 584, 593 (2d Cir.1978). The proof adduced at trial was, " 'without weighing the credibility of the witnesses or otherwise considering the weight of the evidence,' " *Croce v. Kurnit*, 737 F.2d 229, 237 (2d Cir.1984) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)), insufficient to allow a reasonable juror to conclude that there was a meeting of the minds on all of the material terms of the alleged October 1975 agreement.

Finally, count 17, which alleged that employees of the Bank negligently misrepresented the Bank's willingness to lend Durante $100,000 in the fall of 1975 was properly dismissed because Durante failed to establish a special relationship between itself and the Bank such as to give rise to a duty to avoid such negligent misrepresentations. Under New York law, a plaintiff may not recover for negligent misrepresentation unless "the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all...." *White v. Guarente*, 43 N.Y.2d 356, 362–63, 372 N.E.2d 375, 319, 401 N.Y.S.2d 474, 478 (1977); *accord Survey of New York Practice*, 56 St. John's L.Rev. 371, 410 (1982) ("[T]he imposition of a duty to speak carefully when the damages are limited to economic loss, requires proof of a special relationship between the parties sufficient to justify actionable reliance"). An ordinary creditor-debtor relationship between bank and customer does not create such a duty of care. *See Aaron Ferer & Sons v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir.1984). Where the alleged negligent misrepresentation was promissory rather than factual, liability has been imposed only where there was shown a special relationship or a breach of contract. *See Banker's Trust Co. of Western New York v. Steenburn*, 95 Misc.2d 967, 991–93, 409 N.Y.S.2d 51, 66–67 (Sup.Ct. Chautauqua County 1978). *See also Coolite Corp. v. American Cyanamid Co.*, 52 A.D.2d 486, 488, 384 N.Y.S.2d 808, 810 (1st Dep't 1976) (denial of motion to dismiss upheld in part on basis that misrepresentations were not promissory but factual).

In the present case, no special relationship was shown between Durante and the Bank that could support a claim for negligent misrepresentation. Rather, as Durante's owner testified at trial, Durante was "trying to get more and more credit from the Flushing National Bank, *so eventually we could work ... into* a regular banking relationship with the bank." (Emphasis added.) Further, the alleged misrepresentation here was of a promissory character; and, as discussed above, Durante failed to prove that there was a sufficient meeting of the minds to create any contractual relationship. In short, Durante failed to establish the factors that could have given rise to a duty on the part of the defendants to avoid the negligent misrepresentation it alleges.

Durante's reliance on *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 81–83 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981), for the proposition that no special relationship need be shown is misplaced. In *Mallis*, the misrepresentation was purely factual, relating to whether there was a restriction on the negotiability of certain unregistered stock. Durante has

called to our attention no New York case, and we are aware of none, ruling that liability may be imposed on a defendant for a negligent promissory misrepresentation that could not give rise to liability for either fraud or breach of contract, where there was no special relationship between plaintiff and defendant.

## C. *Assertions of Trial Error*

Durante contends that the court improperly excluded three lines of material evidence at trial. We disagree. The proffered testimony of Daniel Palmieri was properly excluded because it was based on his conversations with Durante. He had no first hand knowledge of the facts sought to be introduced and hence his testimony was excludable on hearsay grounds. The exclusion of the proffered documentation and expert testimony as to the regulation of Flushing by the Comptroller of the Currency was not an abuse of the trial court's discretion, granted by Fed.R.Evid. 403, to exclude evidence whose tendency to introduce extraneous or distracting matter, or otherwise to prejudice, outweighs its probative value. Finally, the evidence proffered as to profits allegedly lost by Durante years after the Bank's alleged breach of its agreement to lend Durante $100,000, and as to Durante's legal expenses in the intervening years, principally in connection with matters not involving the Bank, was properly excluded on the ground that the claimed items of damage were too remote to be recoverable.

Nor do we find any error in the trial court's instructions to the jury. The court gave all required instructions and, taken as a whole, the charge was unlikely to have misled the jury as to the applicable law, or Durante's contentions, or the interrelation between the two. *See Evans v. Transportacion Maritime Mexicana SS "Campeche"*, 639 F.2d 848, 860 (2d Cir.1981).

## CONCLUSION

The judgment of the district court is vacated insofar as it dismissed counts 1, 3, and 5 of the complaint, and the matter is remanded for further proceedings on those counts. In all other respects, the judgment is affirmed. Each party shall bear his or its costs on this appeal.

Jurisdiction is retained in the Court of Appeals.